# EXHIBIT F

under this Agreement.  In no event, however, shall a personal representative or successor become a substitute Member unless the requirements of Section 8.3 are satisfied.

4.7  *Maintenance of Confidentiality.*  Except as contemplated hereby or required by a court of competent authority, the Company and each Member and Manager shall keep confidential and shall not disclose to others and shall use their best efforts to prevent any present or former agents, or representatives from disclosing to others without the prior written consent of all  Members any Company Confidential Information. As used herein the term "**Company Confidential Information**" shall include, but not be limited to, all confidential and/or proprietaryknowledge, data, or information of the Company, that is designated and treated as confidential by Company including, without limitation, any: (i) financial information, customer information, trade secrets, drawings, inventions, methodologies, mask works, ideas, processes, formulas, source and object codes, data, programs, software source documents, works of authorship, know-how, improvements, discoveries, developments, designs and techniques, and all other work product of the Company, whether or not patentable or registrable under trademark, copyright, patent or similar laws; (ii) information regarding plans for research, development, new service offerings and/or products, marketing, advertising and selling, distribution, business plans, business forecasts, budgets and unpublished financial statements, licenses, prices and costs, suppliers, customers or distribution arrangements; (iii) any information regarding the skills and compensation of employees, suppliers, agents, and/or independent contractors of the Company;  (iv) concepts and ideas relating to the development and distribution of content in any medium or to the current, future and proposed products or services of the Company; or (v) any other information, data or the like that is labeled and treated as confidential by the Company. The covenants and obligations set forth in this Section 4.7 shall survive and be enforceable in law and/or equity against a Member after such Member's resignation or any other termination of Member's employment with the Company.

4.8  *Assignment of Inventions and New Discoveries.*
(a)  The Company has and shall have the sole and exclusive right, title, and interest in and to all customer lists and information, Member work product, computer programs (both source code and object code), software, firmware, designs, application programs, operating systems, scripts, animation sequences, interfaces, programming code, applets, executables, objects, formats or page descriptions, data, databases, computer architecture or hierarchies, files and utilities (together with  all supporting documentation for any of the foregoing, including input and output formats, listings, narrative descriptions, operating instructions and training documentation) writings, drawings, designs, discoveries, ideas, conceptions, formulas, mask works, information, innovations, inventions, methods, processes, apparatuses, devices, products, techniques, technologies, developments and improvements thereto and physical manifestation thereof (whether or not patentable or copyrightable) that are acquired, conceived, created, developed, or reduced to practice in whole or in part by any Member (either alone or with others) during the course of the Member's employment with the Company, whether or not during normal business hours or on the Company's premises, that: (i) relate in any way to the business of

11

(a)     To payment of the debts and satisfaction of the other obligations of the Company, including, without limitation, debts and obligations to Members;

(b)     To the establishment of any reserves deemed appropriate by the Liquidator for any liabilities or obligations of the Company, which reserves will be held for the purpose of paying liabilities or obligations and, at the expiration of a period the Liquidator deems appropriate, will be distributed in the manner provided in Section 10.2(c); and thereafter

(c)     To the payment to the Members of the positive balances in their respective Capital Accounts, pro rata, in proportion to the positive balances in those Capital Accounts after giving effect to all allocations under Article VI and all Distributions under Article VII for all prior periods, including the period during which the process of liquidation occurs.

(d)     The balance, if any, to the Members in accordance with and in proportion to their respective Percentage Interests.

10.3.   *Articles of Dissolution.*   Upon the dissolution and commencement of the winding up of the Company, the Managers shall cause Articles of Dissolution to be executed on behalf of the Company and filed with the Secretary of State, and the Managers shall execute, acknowledge, and file any and all other instruments necessary or appropriate to reflect the dissolution of the Company.

## ARTICLE XI
## NONCOMPETITION AND NONSOLICITATION

11.1.   *Noncompetition.*

(a)     In order to protect the Company from unfair competition, and to prevent the unauthorized disclosure or use of Company Confidential Information, each Member and Manager agrees that, absent the prior express written consent of the Company, for so long as they are a Member or Manager of the Company they shall not directly or indirectly compete with the Company.

(b)     Each Member and Manager acknowledges and agrees that any Person or business entity that provides managerial, administrative and operational services to an individual who is licensed to practice engineering in a state in which the Company provides its services (or an entity owned by one or more such individuals that practices engineering) is considered a "Competitor" or "competing business" of the Company if such Person or entity performs or provides such services in the Restricted Territory.

(c)     In order to protect the Company from unfair competition and to prevent the unauthorized disclosure or use of the Company Confidential Information, each

22

Docusign Envelope ID: 39DE793D-37BF-4346-B308-C00E495B8275

Member and Manager further agrees to the following noncompetition restrictions. In doing so, each Member and Manager acknowledges and agrees that such restrictions will last for one (1) year immediately following the termination of their membership or management relationship with the Company (the "**Restricted Period**"), regardless of whether such termination is voluntary or involuntary, or with or without cause. During such Restricted Period and within the Restricted Territory defined below, each Member and Manager shall not compete with the Company through his or her own actions, or through an agent, representative or other third party acting in concert with them, as follows:

(1)     The Member or Manager shall not develop, market, solicit, sell, or otherwise provide or perform services identical to those services that Member or Manager developed, marketed, solicited, sold, provided or performed on behalf of the Company while a Member or Manager of the Company;

(2)     The Member or Manager shall not become employed by (as an officer, director, employee, consultant or otherwise), or otherwise become commercially interested in or affiliated with (whether through direct, indirect, actual or beneficial ownership or through a financial interest), a Competitor, unless the Member or Manager accepts employment or affiliation with a Competitor in an area of the Competitor's business which does not compete with the Company;

(3)     The Member or Manager shall not enter into any contract or business arrangement with any supplier or contractor of the Company in order to provide managerial, administrative and operational services to an individual who is licensed to practice engineering in a state in which the Company provides its services (or an entity owned by one or more such individuals that practices engineering in such state). A "supplier or contractor" shall be defined as any Person or business entity that during the six-month period immediately preceding the termination of the Member's membership or Manager's management role with the Company has sold products or services to the Company, or has contracted to sell such products or services, in order to help enable the Company to provide its services.

(d)     In recognition of the nationwide basis of the Company's business, each Member and Manager's involvement on a nationwide basis in the core activities of Company's Business and the ease of competing with that Business in any part of the United States, for the purposes of this Agreement, the "**Restricted Territory**" shall be defined as the United States. In the alternative, and only if the aforementioned territory is deemed by

23

a court of competent jurisdiction to be unreasonable or otherwise invalid or unenforceable, then the Restricted Territory shall be defined as the states of Alabama, Florida, Georgia, Kentucky, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia and West Virginia. In the alternative, and only if the aforementioned territory is deemed by a court of competent jurisdiction to be unreasonable or otherwise invalid or unenforceable, then the Restricted Territory shall be defined as the states of Florida, North Carolina, South Carolina and Virginia . In the alternative, and only if the aforementioned territory is deemed by a court of competent jurisdiction to be unreasonable or otherwise invalid or unenforceable, then the Restricted Territory shall be defined as the state of North Carolina.

(e)     Each Member and Manager further agrees that during the Restricted Period and within the Restricted Territory, he shall not hire, employ, solicit or attempt to solicit or induce any Person employed with the Company, or solicit or induce any supplier or other contractor of the Company, to leave such employment, or to end or reduce any business relationship with the Company, or to violate any covenant not to compete, non-solicitation agreement, confidentiality agreement, nondisclosure agreement or any other restrictive covenant, employment agreement, independent contractor agreement or other business relationship with the Company.

(f)     The covenants and obligations set forth in this Section 11.1 shall survive and be enforceable in law and/or equity after the Member or Manager's termination of membership or management role with the Company.

11.2.   *Non-solicitation.*

(a)     Each Member and Manager further acknowledges and agrees that: (1) the Company's business relationships developed by the Company have been developed through significant effort by the Company; and (2) such customers are vital to the success of the Company, whose communications and business dealings with them are not only protected as part of Company Confidential Information, but also deserve protection in a manner separate from the noncompetition restrictions described above.

(b)     Therefore, in addition to the covenant not to compete obligations as described above, and in order to further protect Company from unfair competition and to prevent the unauthorized disclosure or use of Company Confidential Information, each Member and Manager agrees that during the Restricted Period they shall not solicit or attempt to solicit, the managerial, administrative and operational services business of any of the Company's Customers to whom that Member or Manager (or anyone directly supervised by them) has sold any Company products or for which said Member or Manager (or anyone directly supervised by them) has rendered any services while a Member or Manager of the Company, regardless of where such Customer is located.  (For the purposes of this Agreement, "**Customer**" shall mean any Person that has purchased Company's products or to whom Company has provided services during the twelve (12) months immediately before the termination of the Member's membership of the Manager's management role as the case may be. Each Member and Manager agrees that such customer

24

identification is made for the sole purpose of determining which persons or entities are affected by this restriction, and not as an extension of the Restricted Period.)

(c)     The covenants and obligations set forth in this Section 11.2 shall survive and be enforceable in law and/or equity after the Member or Manager's termination of membership or management role with the Company.

11.3.   *Remedies and Attorneys' Fees.*

(a)     Each Member and Manager acknowledges and agrees that the restrictions contained in this Article XI of this Agreement are reasonable and necessary to protect the legitimate interests of the Company, and that any violation of this Article XI, or any part thereof, will result in immediate and irreparable harm to the Company for which a remedy at law is inadequate.

(b)     Each Member and Manager further acknowledges and agrees that upon any such breach or threatened breach, the Company shall be entitled as a matter of right to injunctive relief in any court of competent jurisdiction, in equity or otherwise, and to enforce the specific performance of the Member or Manager's obligations under these provisions without having to prove actual damage to the Company or the inadequacy of a legal remedy.  The rights conferred upon the Company by the preceding shall not prevent the Company from recovering any form of monetary damages or other equitable relief, including but not limited to actual, compensatory and punitive damages, and attorneys' fees.

(c)     The covenants and obligations set forth in this Section 11.3 shall survive and be enforceable in law and/or equity after the Member or Manager's termination of membership or management role with the Company.

11.4.   *Noncompeting Activities of Members and Managers.*  Except as expressly provided otherwise in this Article XI of this Agreement, any Member or Manager may engage, invest  or possess an interest in, directly or indirectly, other business ventures (including future ventures) or transactions of any nature or description, independently or with others. Each Member and Manager shall disclose and make available to the Company each business opportunity that is directly related to the business engaged in by the Company of which such Member or Manager becomes aware, for so long as such Member is a Member of the Company or such Manager is a Manager of the Company.  The fact that a Member or Manager or any affiliate of a Member or Manager may take advantage of an opportunity that does not constitute a violation of the noncompetition or non-solicitation provisions of Article XI (a "**Noncompeting Opportunity**," plural "**Noncompeting Opportunities**"), either alone or with other persons, and not offer such Noncompeting Opportunity to the Company or to the Members, shall not subject such Member or Manager or affiliate to liability to the Company or to the Members on account of any lost opportunity.  Neither the Company nor any Member shall have any right by virtue of this Agreement, or the relationship created hereby, in or to such Noncompeting Opportunities,

25

or to the income or profits derived therefrom, and the pursuit of such Noncompeting Opportunities shall not be deemed wrongful or improper or in violation of this Agreement or any rights of the Company or the Members under the Act or other applicable law.

## ARTICLE XII
## MISCELLANEOUS

12.1.   *Records*.  The records of the Company will be maintained at the Company's principal place of business, or at such other place selected by the Managers, provided that the Company keeps at its principal place of business the records required by the Act to be maintained there.  Appropriate records in reasonable detail will be maintained to reflect income tax information for the Members.  Each Member, at such Member's expense, may inspect and make copies of the records maintained by the Company and may require an audit of the books of account maintained by the Company to be conducted by independent accountants for the Company.

12.2.   *Reserves*.  The Managers may cause the Company to create reasonable reserve accounts to be used exclusively to fund Company operating deficits and for any other valid Company purpose.  The Managers shall in their sole discretion determine the amount of payments to such reserve accounts.

12.3.   *Notices*.  The Managers will notify the Members of any change in the name, principal or registered office or registered agent of the Company.  Any notice or other communication required by this Agreement must be in writing.  Notices and other communications will be deemed to have been given when delivered by hand or dispatched by means of electronic facsimile transmission or nationally recognized air courier, or on the third business day after being deposited in the United States mail, postage prepaid.  In each case, notice hereunder shall be addressed to the Member to whom the notice is intended to be given at such Member's address set forth on Schedule I to this Agreement or, in the case of the Company, to its principal place of business.  A Member may change its notice address by notice in writing to the Company and to each other Member given in accordance with this Section 12.3.

12.4.   *Amendments*.  No provision of this Agreement or the Articles of Organization may be amended, nor will any waiver of any term of this Agreement be effective, unless in writing and signed by a Supermajority in Interest of the Members and all of the Managers.

12.5.   *Additional Documents*.  Each party hereto agrees to execute and acknowledge all documents and writings which the Managers may deem necessary or expedient in the creation of the Company, including, but not limited to, Articles of Organization and any amendments or cancellation thereof.

---

26