

1127 Curtis Street, Suite 100
Monroe, NC 28112
P. 704.283.9765  F. 704.283.9755
www.integrityenvsol.com

December 20, 2024

**VIA FEDEX AND EMAIL**

Mr. Matthew Outlaw
1202 North Riverhills Drive
Temple Terrace, Florida 33617
Moutlaw.ohr@gmail.com

Re:  Integrity Environmental Solutions, LLC/Operating Agreement Confidentiality, Noncompetition and Non-solicitation Obligations; JJAM STAND, LLC (f/k/a Carlson Environmental Consultants, PC) Confidentiality and Noncompetition Agreement

Dear Matt:

I am writing you as Manager of Integrity Environmental Solutions, LLC ("Integrity") and President of Integrity's wholly-owned subsidiary JJAM STAND, LLC (f/k/a Carlson Environmental Consultants, PC) ("JJAM").

As you will recall, effective April 1, 2020, you signed a Confidentiality and Noncompetition Agreement with JJAM in connection with your subscription for shares in JJAM and in consideration of a payment to you of $500 by JJAM (the "Noncompete Agreement"). Pursuant to the Noncompete Agreement you agreed, among other things: to maintain the confidentiality of JJAM's Confidential Information, to not compete with JJAM in the United States, and to not solicit JJAM's employees or its customers for a period of two (2) years following the termination of your employment with JJAM. A copy of the Noncompete Agreement is attached.

As you will also recall, effective June 5, 2024, you signed the Operating Agreement of Integrity Environmental Solutions, LLC in connection with and as a condition of your admission as a Member of Integrity (the "Operating Agreement"). Pursuant to the Operating Agreement, you agreed among other things: to maintain the confidentiality of Company Confidential Information, to not compete with Integrity in the United States while you were a Member of Integrity and for a period of one (1) year following the termination of your membership relationship with Integrity, and to not solicit Integrity's employees or its customers for a period of one (1) year following the termination of your membership relationship with Integrity.  A copy of the relevant provisions of the Operating Agreement is attached.

From your own statements and otherwise, Integrity and JJAM now have reason to believe that you may be violating the Noncompete Agreement and the Operating Agreement in at least the following ways: (1) you may be providing to LFG Service Partners, Inc. or its constituent entities BioVac Industrial Services and Monitoring Control and Compliance (collectively for all entities, "BioVac") in the United States services identical to those services you provided to JJAM and Integrity; (2) you may be soliciting your former coworkers on BioVac's behalf by providing their personal cell phone numbers to BioVac, which is then contacting them on their personal cell phones to solicit them to leave their employment.

You should also be aware that JJAM and Integrity have conducted business in the states of Indiana, Kentucky, Ohio, Michigan, Pennsylvania and West Virginia for several years, serving customers there and realizing over $15 million in revenue in those states collectively over the past three years.  Also, as we have indicated to you, BioVac is one of JJAM's and Integrity's most significant competitors in these and other states. You should also be aware that Judge Frank Whitney of the United States District Court for

Orlando, FL • Tampa, FL • Marietta, GA • Hickory, NC • Monroe, NC
Statesville, NC • Tullytown, PA • Columbia, SC • Richmond, VA • Olympia, WA
Page 1 of 2

Case 3:25-cv-00220-FDW-SCR     Document 10-1     Filed 09/05/25     Page 1 of 14

the Western District of North Carolina previously has enforced on a nationwide basis the noncompetition obligations of a former JJAM employee living in Illinois and attempting to work for a competitor in Texas, and we have no reason to believe he will not grant the same injunctive relief against you. Thus, we are not willing to amend the terms of your confidentiality, noncompetition and non-solicitation obligations as you have proposed.

If you are currently employed or engaged by BioVac or others in providing industrial cleaning or operations and maintenance ("O&M") services as stated above, or if you are soliciting your former coworkers to leave their employment by providing their personal cell phone numbers to BioVac in furtherance of its raiding our employees, using or disclosing Confidential Information or otherwise violating the Noncompete Agreement and/or the Operating Agreement, JJAM and Integrity hereby demand that you immediately cease and desist from such employment and/or activities. In addition, please immediately return to me all confidential documents or other written or electronic information that you may have concerning JJAM's and Integrity's customers or methods of doing business, and any other property that belongs to JJAM or Integrity.

Your failure to do so, or to otherwise provide assurances to me within ten (10) days of the date of this letter that you are not violating your restrictive covenants, may lead to further legal action, and may subject you to liability for monetary damages and any other form of legal or equitable relief that may be awarded, including JJAM's and Integrity's reasonable attorney's fees. It may also subject BioVac to liability for money damages for tortious interference with the Noncompete Agreement and Operating Agreement as well as treble damages and attorney's fees pursuant to N.C.G.S. §75-16.1, the North Carolina Unfair and Deceptive Trade Practices Act.

Thank you for your prompt attention to this matter. <u>Please contact me by December 31, 2024, concerning your compliance with this letter and the terms of your restrictive covenants.</u> You will receive no further warnings in these matters before we take any additional legal action against you. Please note that by copy of this letter, I am also notifying BioVac of your confidentiality, noncompetition and non-solicitation covenants and BioVac's potential liability for its tortious interference with your contractual obligations.

Lastly, we do remain willing to work with you on potential future employment opportunities you may have that do not violate your confidentiality, noncompetition and non-solicitation obligations or interfere in our business in an unacceptable manner during the restricted period. However, we strongly recommend you contact us prior to accepting any new positions in our industry to avoid similar situations to this one.

Sincerely,

Seth Nunes
Manager, Integrity Environmental Solutions, LLC
President, JJAM STAND, LLC


cc: James Baird (w/enc) (via email to jbaird@landfillgasom.com)
    Matthew R. Joyner (w/enc) (via email to mjoyner@bdjalaw.com)
    Elizabeth Vennum (w/enc) (via email to lvennum@lawyercarolina.com)

integrity

# CONFIDENTIALITY AND NONCOMPETITION AGREEMENT

**THIS CONFIDENTIALITY AND NONCOMPETITION AGREEMENT** ("**Agreement**"), is made and effective this 1st day of April, 2020 (the **Effective Date**"), by and between **MATTHEW OUTLAW** ("**Employee**"), a citizen and resident of Hillsborough County, Florida, residing at 1202 North Riverhills Drive, Temple Terrace, Florida 33617, and **CARLSON ENVIRONMENTAL CONSULTANTS, PC** ("**Employer**"), a North Carolina professional corporation with an office and principal place of business at 305 South Main Street, Monroe, North Carolina 28112.

## RECITALS:

**WHEREAS**, on April 1, 2020, Employee and other employees of Employer ("**Subscribers**") entered into a Joint Subscription Agreement with Employer whereby Subscribers subscribed for shares of Employer's common stock, thus becoming shareholders of Employer; and

**WHEREAS**, Employer is engaged in the business of providing specialty engineering, operations and maintenance, and construction services to the solid waste industry (the "**Business**"); and

**WHEREAS**, Employer wishes to continue to employ Employee as an at-will employee and to pay Employee a one-time payment in the amount of Five Hundred Dollars ($500) for entering into this Agreement completely separate from the compensation and benefits Employee receives from Employer as compensation for his at-will employment, while protecting Employer's business, goodwill, trade secrets and other confidential information; and

**WHEREAS**, Employee desires to continue his at-will employment with Employer, to obtain Employer's payment of Five Hundred Dollars ($500) for entering into this Agreement and to provide assurances for the protection of Employer's business, goodwill, trade secrets and other confidential information.

## AGREEMENT:

**NOW, THEREFORE**, in consideration of Employer's one-time payment to Employee of the sum of Five Hundred Dollars ($500) and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Employee and Employer hereby agree as follows:

1. Noninterference with Third-Party Rights.

    a. Employer has no interest in using any other person's or business entity's patents, copyrights, trademarks, confidential information or trade secrets in an unlawful manner. Employee represents that: (1) he is free to be employed by Employer and has no confidentiality

1

agreement, covenant not to compete, or other noncompetition, non-solicitation or nondisclosure agreement that would preclude him from being so employed; and (2) except as expressly noted herein, he does not possess, and has not used or disclosed to Employer, any confidential and proprietary information or trade secrets of any former employer or other business entity in applying for and entering into an employment relationship with Employer. Employee shall not use, disclose or otherwise misapply any such information or trade secrets during his employment with Employer, and Employee affirms that he has fully disclosed to Employer the full extent of any past relationship with previous employers or other business entities that might involve any continuing obligations or restrictions regarding such matters as confidential information, trade secrets, noncompetition or non-solicitation.

        b.      Employee will keep, save, protect, defend, indemnify and hold Employer harmless from and against any and all costs, claims, expenses, damages, or deficiencies resulting from any misrepresentation, breach, default or non-fulfillment of any agreement or covenant set forth in this Section 1.

        c.      The covenants and obligations set forth in this Section 1 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

2. <u>Assignment of Inventions and other New Discoveries</u>.

        a.      Employer has and shall have the sole and exclusive right, title, and interest in and to all customer lists and information, Employee work product, computer programs (both source code and object code), software, firmware, designs, application programs, operating systems, scripts, animation sequences, interfaces, programming code, applets, executables, objects, formats or page descriptions, data, databases, computer architecture or hierarchies, files and utilities (together with all supporting documentation for any of the foregoing, including input and output formats, listings, narrative descriptions, operating instructions and training documentation) writings, drawings, designs, discoveries, ideas, conceptions, formulas, mask works, information, innovations, inventions, methods, processes, apparatuses, devices, products, techniques, technologies, developments and improvements thereto and physical manifestation thereof (whether or not patentable or copyrightable) that are acquired, conceived, created, developed, or reduced to practice in whole or in part by Employee (either alone or with others) during the course of Employee's employment with Employer, whether or not during normal business hours or on Employer premises, that: (i) relate in any way to the Business of Employer, or to actual or anticipated research and development of Employer, or (ii) result in any way from the performance by Employee of duties and responsibilities as an employee of Employer ("**New Discoveries**"). Employee shall promptly and fully disclose to Employer all New Discoveries as Confidential Information as that term is defined below. Employee further agrees that all original works of authorship which are made by Employee (either alone or with others) within the scope of and during the period of Employee's employment with Employer and which are protectable by copyright laws, are "works made for hire" as that term is defined in the United States Copyright Act. Employee agrees to assign and hereby does assign to Employer all right, title, and interest in and to such New Discoveries in all countries, including without limitation any worldwide patents, patent applications, copyright(s), copyright applications, moral rights, and any and all other such

2

rights of whatever kind in the New Discoveries, and the right to obtain grants, issuances, continuing applications, registrations, renewals, reissues and extensions of the same. Employee further agrees that Employer shall have the right to use, copy, execute, display, perform, publish, authorize reproduction of, reproduce, alter, or destroy the New Discoveries, to make derivative works in any medium now known or hereinafter created and to take any other action consistent with Employer's sole and exclusive ownership thereof, and Employee waives any right to interfere with or to prevent the exercise of the forgoing rights by Employer in its sole and absolute discretion

        b. Employee shall, at the request of Employer at any time, including after Employee's employment with Employer ends, and without further compensation, take all actions and otherwise cooperate in all lawful acts which may be necessary or desirable in the judgment of Employer to protect for the benefit of Employer all such New Discoveries, including the execution of all instruments reasonably requested by Employer to secure and perfect Employer's (or its assigns') sole and exclusive right, title and interest in and to New Discoveries, including but not limited to the execution of instruments assigning to others designated by Employer all of Employee's right, title and interest in and to New Discoveries, the execution of any patent application, application for registration, or the like, and the provision of assistance in preparing applications, registration forms, and other documents relating to the acquisition or maintenance of copyrights, patents and trademarks in the United States and in other countries.

        c. The covenants and obligations set forth in this Section 2 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

3.   Confidential Information.

        a. Employee acknowledges and agrees that: (1) the business of providing specialty engineering, operations and maintenance, and construction services to the solid waste industry is highly competitive and involves the use of trade secrets and other confidential and proprietary information of Employer as described in Section 3(b) of this Agreement; (2) if such trade secrets or information were disclosed to a competing business or otherwise used in an unauthorized manner, or if Employee accepted employment with a competing business in violation of this Agreement, such disclosure, use or employment would cause immediate and irreparable harm to Employer and would give a competing business an unfair advantage against Employer; and (3) Employer wishes to protect such trade secrets and information from unauthorized possession, use or disclosure, and to protect itself from unfair competition.

        b. Employee acknowledges and agrees that through his employment with Employer, he is and will be provided with trade secrets and other confidential and proprietary information concerning Employer (all of which trade secrets and confidential information, individually and collectively, are referred to in this Agreement as "**Confidential Information**"), including but not limited to one or more of the following: information concerning the Employer's discoveries, ideas, conceptions, formulas, mask works, licensed technologies and software, information, innovations, inventions, methods, processes, apparatuses, devices, products, techniques, technologies, and improvements thereto and physical manifestation thereof; information concerning the nature of Employer's business and its manner of operation, financial

3

and accounting information, such as cost, pricing and billing information, customer profiles, financial policies and procedures, revenues and profit margins; sales and marketing information, such as sales strategies and programs, and information concerning Employer's customers and customer lists; company policies and procedures; information concerning Employer's business relationships with persons, firms, corporations and other entities; and other internal business information of Employer.

        c.      Employee further acknowledges and agrees that such Confidential Information is a valuable and unique asset of Employer, and that he will not at any time or in any manner, directly or indirectly, divulge, disclose or communicate any such Confidential Information to any person, firm, corporation or other entity for any reason without the prior express, written consent of Employer unless such information: (i) is in the public domain through no wrongful act of Employee; (ii) has been rightfully received from a third party without restriction and without breach of this Agreement; or (iii) except as may be required by law.

        d.      All Confidential Information developed, created or maintained by Employee, alone or with others while employed by Employer, and all Confidential Information maintained by Employee thereafter, and any and all of Employer's property and equipment, including but not limited to journals, technical notes, data, reports, prototypes, computers, CDs, diskettes, remote drives, software, computer programs and files, calculators, car or cellular telephones, pagers, personal data assistants, credit cards, keys or other equipment issued to Employee or which Employee otherwise obtained during his employment with Employer, shall remain at all times the exclusive property of Employer. Employee shall return to Employer all such equipment and Confidential Information, and reproductions thereof, that are in his possession immediately upon request and in any event upon any termination of his employment with Employer. Employee agrees that he will not in any manner use Employer's Confidential Information, or any of its property or equipment, except as authorized by Employer at any time.

        e.      The covenants and obligations set forth in this Section 3 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

4.    <u>Covenant Not To Compete</u>.

        a.      In order to protect Employer from unfair competition, and to prevent the unauthorized disclosure or use of Employer's Confidential Information, Employee agrees that, absent the prior express written consent of Employer, during Employee's employment with Employer he shall not directly or indirectly compete with Employer by soliciting, selling or providing services to the benefit of any person or entity other than Employer that are the same or substantially similar in nature to those services provided by Employee to Employer.

        b.      Employee acknowledges and agrees that any person or business entity that provides specialty engineering, operations and maintenance, and construction services to the solid waste industry is considered a "Competitor" or "competing business" of Employer if such person or entity performs or provides such services in the same geographical areas and/or to a substantially similar customer base serviced by Employer through its employees and any independent contractors.

4

c.  In order to protect Employer from unfair competition and to prevent the unauthorized disclosure or use of Employer's Confidential Information, Employee further agrees to the following noncompetition restrictions. In doing so, Employee acknowledges and agrees that such restrictions will last for one (1) year immediately following Employee's resignation or termination of employment with Employer (the "**Restricted Period**"), regardless of whether such separation from employment is voluntary or involuntary, or with or without reason. During such Restricted Period and within the Restricted Territory defined below, Employee shall not compete with Employer through his own actions, or through an agent, representative or other third party acting in concert with him, as follows:

(1) Employee shall not develop, market, solicit, sell, or otherwise provide or perform services identical to those services that Employee developed, marketed, solicited, sold, provided or performed while employed with Employer;

(2) Employee shall not become employed by (as an officer, director, employee, consultant or otherwise), or otherwise become commercially interested in or affiliated with (whether through direct, indirect, actual or beneficial ownership or through a financial interest), a Competitor, unless Employee accepts employment with a Competitor in an area of the Competitor's business which does not compete with the Employer; or

(3) Employee shall not enter into any contract or business arrangement with any supplier of Employer in order to provide specialty engineering, operations and maintenance, and construction services to the solid waste industry. A "supplier" shall be defined as any person or business entity that during the six-month period immediately preceding Employee's resignation or termination of employment with Employer has sold products or services to Employer, or has contracted to sell such products or services, in order to help enable Employer to provide specialty engineering, operations and maintenance, and construction services to the solid waste industry.

d.  In recognition of the nationwide basis of the Employer's Business, Employee's involvement on a nationwide basis in the core activities of Employer's Business and the ease of competing with that Business in any part of the United States, for the purposes of this Agreement, the "**Restricted Territory**" shall be defined as the United States. In the alternative, and only if the aforementioned territory is deemed by a court of competent jurisdiction to be unreasonable or otherwise invalid or unenforceable, then the Restricted Territory shall be defined as the states of Florida, Georgia, South Carolina, North Carolina, Virginia, Tennessee, Alabama, Louisiana, Mississippi, and Kentucky. In the alternative, and only if the aforementioned territory is deemed by a court of competent jurisdiction to be unreasonable or otherwise invalid or unenforceable, then the Restricted Territory shall be defined as the states of Florida, Georgia, and

South Carolina. In the alternative, and only if the aforementioned territory is deemed by a court of competent jurisdiction to be unreasonable or otherwise invalid or unenforceable, then the Restricted Territory shall be defined as the state of Florida.

e. Employee further agrees that during the Restricted Period and within the Restricted Territory, he shall not hire, employ, solicit or attempt to solicit or induce any person employed with Employer, or solicit or induce any supplier or other contractor of Employer, to leave such employment, or to end or reduce any business relationship with Employer, or to violate any covenant not to compete, non-solicitation agreement, confidentiality agreement, nondisclosure agreement or any other restrictive covenant, employment agreement, independent contractor agreement or other business relationship with Employer.

f. The covenants and obligations set forth in this Section 4 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

5. Non-solicitation.

a. Employee further acknowledges and agrees that: (1) Employer's business relationships with its customers have been developed through significant effort by Employer; and (2) such customers are vital to the success of Employer, whose communications and business dealings with them are not only protected as part of its Confidential Information, but also deserve protection in a manner separate from the noncompetition restrictions described above.

b. Therefore, in addition to Employee's covenant not to compete obligations as described above, and in order to further protect Employer from unfair competition and to prevent the unauthorized disclosure or use of its Confidential Information, Employee agrees that during the Restricted Period he shall not solicit or attempt to solicit, the business of any of the Employer's Customers to whom Employee (or anyone directly supervised by Employee) has sold any Employer products or services while employed by Employer, regardless of where such Customer is located. (For the purposes of this Agreement, "**Customer**" shall mean any Person that has purchased Employer's products or services during the twelve (12) months immediately before the Restricted Period. Employee agrees that such customer identification is made for the sole purpose of determining which persons or entities are affected by this restriction, and not as an extension of the Restricted Period.)

c. The covenants and obligations set forth in this Section 5 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

6. Remedies.

a. Employee acknowledges and agrees that the restrictions contained in this Agreement are reasonable and necessary to protect the legitimate interests of Employer, and that any violation of this Agreement, or any part thereof, will result in immediate and irreparable harm to Employer for which a remedy at law is inadequate.

b.  Employee further acknowledges and agrees that upon any such breach or threatened breach, Employer shall be entitled as a matter of right to injunctive relief in any court of competent jurisdiction, in equity or otherwise, and to enforce the specific performance of Employee's obligations under these provisions without having to prove actual damage to Employer or the inadequacy of a legal remedy. The rights conferred upon Employer by the preceding shall not prevent Employer from recovering any form of monetary damages or other equitable relief, including but not limited to actual, compensatory and punitive damages, and attorneys' fees.

c.  Employee further represents and acknowledges that his experience and capabilities are such that enforcement of the provisions of this Agreement will not prevent Employee from earning a livelihood.

d.  The covenants and obligations set forth in this Section 6 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

7.  **Termination Certification and Notification of New Employer.** Upon any resignation or termination of Employee's employment with Employer, Employee agrees to immediately complete, sign and deliver to Employer the "Termination Certification" attached hereto as Exhibit A. Employee also agrees to keep Employer advised of Employee's home and business address during the Restricted Period, so that Employer can contact Employee regarding Employee's continuing obligations under this Agreement. Upon any resignation or termination of Employee's employment with Employer, Employee further agrees and hereby grants Employer Employee's consent for Employer to notify any subsequent employer of Employee of Employee's continuing obligations under this Agreement. The covenants and obligations set forth in this Section 7 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

8.  **Release.** For and in consideration of the payment to Employee of Five Hundred Dollars ($500.00), and the mutual promises, covenants and agreements herein, Employee on behalf of himself, his heirs, personal representatives, successors and assigns hereby generally releases and discharges Employer and its present and former affiliates, parents, subsidiaries, officers, directors, agents, employees, shareholders, attorneys, accountants, managers, members, owners, predecessors, successors and assigns (collectively the "**Employee Releasees**"), of and from any and all claims, liabilities, expenses, damages, demands, actions and causes of action of any kind, whether known or unknown, arising from facts occurring during the period from the beginning of time up to and including the Effective Date, specifically including but not limited to any and all claims by Employee arising out of or relating to the Short Term Agreement or Employee's employment by the Employer pursuant to the Short Term Agreement (including without limitation any and all of those arising under Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Equal Pay Act, as amended; the Civil Rights Act of 1991; the National Labor Relations Act, as amended; the Employee Retirement Income Security Act of 1974, as amended; the Immigration Reform and Control Act, as amended; the Americans with Disabilities Act of 1990, as amended; the Fair Labor Standards Act, as amended; the Family and Medical Leave Act; any other federal, state, or local

7

civil or human rights law or any other local, state, or federal law, regulation, or ordinance; any public policy, contract, tort, or common law), but specifically excluding any claims for breach of this Agreement. Since he is an individual, Employee represents to Employer that: (a) he has carefully read this Agreement and fully understands each and every provision of this Agreement; (b) he has obtained counsel regarding this Agreement from an attorney of his choice or has waived his right to do so, and (c) he is voluntarily entering into and signing this Agreement. The Employee Releasees and each of them respectively are intended third party beneficiaries of the provisions of this Section 8 and are entitled to rely upon and enforce said provisions. The covenants and obligations set forth in this Section 8 shall survive and be enforceable in law and/or equity after Employee's resignation or any other termination of Employee's employment with Employer.

9. Binding Effect. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the heirs, representatives, successors and assigns of Employer (including but not limited to any successor as a result of asset sale, merger, acquisition or similar reorganization). In the event of a sale of all or substantially all of the assets of Employer, employer may assign this Agreement to the purchaser of Employer's assets. Because the duties and responsibilities of Employee pursuant to this Agreement are of a personal nature, they shall not be assigned in whole or in part by Employee.

10. Entire Agreement; Modification. This Agreement constitutes the entire agreement regarding its subject matter, and may not be modified or amended in any way except in writing and with the mutual consent of Employee and Employer. This Agreement supersedes and replaces any prior agreement or agreements of confidentiality, nondisclosure, assignment of New Discoveries or inventions, noncompetition or non-solicitation with Employer that Employee may have executed, and is not intended to and does not affect Employee's employment-at-will relationship with Employer.

11. Waiver; Tolling of Restricted Period. No waiver of any breach of this Agreement shall be construed to be a waiver as to succeeding breaches. Any period of violation of this Agreement which results in legal action to enforce same shall toll the period of time in which Employee shall be restricted hereunder, so that such Restricted Period shall begin and be in full force and effect from the date of such enforcement.

12. Headings. The headings of the sections and subsections of this Agreement are for convenience only and shall not affect the construction or interpretation of any of its provisions.

13. Governing Law; Jurisdiction and Venue. The validity, interpretation, performance and enforcement of this Agreement shall be governed by the laws of the State of North Carolina without regard to any conflict of laws or choice of laws principles to the contrary. If legal action is brought at any time based on any controversy or claim arising out of, or relating to this Agreement, Employee agrees to submit to the jurisdiction and venue of the state civil district and superior courts sitting in Union County, North Carolina, and agrees that such courts shall have exclusive jurisdiction and venue of such action.

14. Attorneys' Fees. In accordance with NCGS §6-21.6, in the event any party to this business contract files legal action against the other party to enforce the terms of this Agreement

and obtains a final, nonappealable judgment or court order granting the relief sought, the party against whom said judgment is entered shall be responsible for paying the reasonable attorneys' fees and expenses of the party who filed the action, in the discretion of the court.

15. <u>Severability.</u> Each provision of this Agreement is intended to be completely severable and independent. If any court of competent jurisdiction determines that one or more of the provisions of this Agreement, or any part thereof, is or are invalid, illegal or unenforceable, such determination shall not affect or impair any other provision of this Agreement, and this Agreement shall be given full force and effect while being construed as if such invalid, illegal or unenforceable provision had not been contained within it. If the scope of any provision in this Agreement is found to be too broad to permit enforcement of such provision to its full extent, the parties consent to judicial modification of such provision and enforcement to the maximum extent permitted by law.

16. <u>Employee Certification.</u> **BY SIGNING THIS CONFIDENTIALITY AND NONCOMPETITION AGREEMENT, EMPLOYEE IS HEREBY CERTIFYING THAT EMPLOYEE (A) RECEIVED A COPY OF THIS AGREEMENT FOR REVIEW AND STUDY BEFORE EXECUTING IT; (B) READ THIS AGREEMENT CAREFULLY BEFORE SIGNING IT; (C) HAD SUFFICIENT OPPORTUNITY BEFORE SIGNING TO CONFER WITH COUNSEL OF EMPLOYEE'S CHOICE; (D) HAD SUFFICIENT OPPORTUNITY BEFORE SIGNING TO ASK ANY QUESTIONS EMPLOYEE HAD ABOUT THE AGREEMENT AND RECEIVED ANSWERS SATISFACTORY TO EMPLOYEE TO ALL SUCH QUESTIONS; (E) UNDERSTANDS EMPLOYEE'S RIGHTS AND OBLIGATIONS UNDER THIS AGREEMENT; AND (F) SIGNS THIS AGREEMENT INTENDING TO BE BOUND BY ITS TERMS AS OF THE EFFECTIVE DATE FIRST WRITTEN ABOVE.**

**BY SIGNING THIS CONFIDENTIALITY AND NONCOMPETITION AGREEMENT, EMPLOYEE IS ALSO ACKNOWLEDGING THAT EMPLOYEE'S EMPLOYMENT WITH EMPLOYER IS AT-WILL.**

9

Case 3:25-cv-00220-FDW-SCR    Document 10-1    Filed 09/05/25    Page 11 of 14

**IN WITNESS WHEREOF**, the parties hereto have signed this Confidentiality and Noncompetition Agreement effective as of the date first above written.

**EMPLOYEE:**

_____(SEAL)
Matthew Outlaw

**EMPLOYER:**

**CARLSON ENVIRONMENTAL CONSULTANTS, PC**

By: _____
    Kristofer L. Carlson
Its: President

*[NOTARIZATION PAGE FOLLOWS]*

10

## NOTARIZATION

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

I, __Sheila G. Fletcher__, a Notary Public of ~~Hillsborough~~ Union County, State of ~~Florida~~ North Carolina do hereby certify that Matthew Outlaw (the "Signatory"), personally appeared before me this day and executed the foregoing instrument.

I certify that the Signatory personally appeared before me this day, and **(check one of the following):**

(1) __✓__ I have personal knowledge of the identity of the Signatory; **or**

(2) ____ a credible witness has sworn to the identity of the Signatory; or

(3) ____ I have seen satisfactory evidence of the Signatory's identity, by a current state or federal identification with the Signatory's photograph in the form of (**check one of the following**); (A) ___ a driver's license; or (B)___ in the form of _____.

The Signatory acknowledged to me that he voluntarily signed the foregoing document for the purposes stated therein and in the capacity indicated.

WITNESS my hand and official stamp or seal this __1st__ day of __April__, 2020.

[NOTARY SEAL]

_Sheila D. Fletcher_
Notary Public

Print Name: __Sheila G. Fletcher__

My Commission expires: __March 14, 2021__

[*Must be legible*]

### *[EXHIBIT PAGE FOLLOWS]*

11

## Exhibit A

## CARLSON ENVIRONMENTAL CONSULTANTS, PC

## TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, cell phones, keys, equipment, other documents, or property, or reproductions of any aforementioned items belonging to Carlson Environmental Consultants, PC ("**CEC**") or its direct and indirect subsidiaries, affiliates, successors or assigns and entities in which CEC directly or indirectly holds a significant ownership interest.

I further certify that I have complied with all the terms of CEC's Confidentiality and Noncompetition Agreement signed by me (the "**Agreement**"), including the reporting of any inventions, original works of authorship or other New Discoveries (as defined in the Agreement), conceived or made by me (solely or jointly with others) covered by that Agreement.

I further agree that, in compliance with the Agreement, I will preserve as confidential all Confidential Information (as defined in the Agreement), including trade secrets, confidential knowledge, data, or other proprietary information relating to customers, software, products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship or New Discoveries, customer lists, business plans, financial information, or other subject matter pertaining to any business of CEC or any of its employees, clients, consultants, or licensees.

After leaving CEC's employment, I will be employed by _____ at its _____ facility in the position of _____.

_____
*Signature of Employee*

Matthew Outlaw
*Print name*

4/1/2020
*Date*

**Address for Notifications**: _____

_____

12